SCOTT N. SCHOOLS (SC 9990)
United States Attorney

BRIAN J. STRETCH (CSBN 163973)
Chief, Criminal Division

ANDREW P. CAPUTO (CSBN 203655)
Assistant United States Attorney

   450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102-3495
   Telephone: (415) 436-7004
   FAX: (415) 436-7234
   Email: andrew.caputo@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>PAUL PARIS,<br><br>    Defendant. | Nos.  CR 07-0111 CRB<br>        CR 07-0293 CRB<br><br>UNITED STATES' SENTENCING MEMORANDUM<br><br>Date:  August 29, 2007<br>Time:  9:30 a.m. |

      Soon after completing service of a 188-month prison sentence for armed bank robbery, defendant Paul Paris robbed a new bank. During the following week, defendant robbed two additional banks. After being arrested, defendant pled guilty to the three bank robberies and to one count of using a firearm during a crime of violence. He now appears for sentencing before this Court. The probation office recommends a 193-month sentence, which is one year longer than the high end of the applicable guidelines range. The United States endorses this recommendation and respectfully asks the Court to sentence defendant to 193 months imprisonment, five years supervised release, $12,740 restitution, and a $400 special assessment.

UNITED STATES' SENTENCING MEMO.
CR 07-0111 CRB, CR 07-0293 CRB

## FACTS

In August and September of 1992, defendant robbed seven banks while armed with a handgun. He subsequently pled guilty to five counts of armed bank robbery. In April 1993, Judge Patel of this court sentenced him to 188 months in prison.

Defendant was released from prison on October 27, 2006, and from a halfway house on February 2, 2007.[1] Exactly one week later, on February 9, defendant robbed the Citibank located at 4638 Mission Street in San Francisco. He approached a teller, removed a silver handgun from his backpack, pointed it at the teller, and demanded money. The teller handed thousands of dollars to defendant, who took the money and left the bank. The teller was deeply frightened by defendant pointing this gun at her. She told the police that she feared for her life. Another teller reported that the victim teller was visibly shaking in the immediate aftermath of the robbery. Presentence Report ("PSR") ¶¶ 7-8, 20.

Five days later, on February 14, 2007, defendant robbed the Bank of the Orient in Millbrae. He followed the same technique as in the earlier robbery: He approached a teller, showed the teller a silver gun, and demanded money. The teller complied by handing defendant thousands of dollars, at which point defendant left the bank. Id. ¶¶ 10-11.

The next day, February 15, 2007, defendant robbed a Provident Credit Union in Folsom. This time he carried a rifle. He pointed the rifle at a teller and threatened the teller, saying "I need the money, I am not kidding." Two tellers gave him thousands of dollars. He then asked one of the tellers to open the bank vault. The teller told defendant that he (the teller) did not have the vault key. While pointing the rifle at the teller, defendant accused the teller of lying and of pressing the bank's alarm button. Defendant then left the bank. Id. ¶¶ 12-13.

Early the next morning, police arrested defendant at a San Francisco motel. In his room they found, among other things, a plastic toy gun that the FBI determined to be the silver gun defendant used in the first two robberies. The officers also found the .22 caliber semi-automatic

---

[1] The February 2 date of release from the halfway house is reflected on the Bureau of Prisons website at bop.gov.

UNITED STATES' SENTENCING MEMO.
CR 07-0111 CRB, CR 07-0293 CRB        2

1. rifle that defendant used in the third robbery. PSR ¶¶ 15-16.
2.     A grand jury sitting in this district returned an indictment charging defendant with armed bank robbery in the first two robberies. A grand jury sitting in the Eastern District of California returned an indictment charging defendant with armed bank robbery in the third robbery. The Eastern District indictment also charged defendant with using and possessing a firearm during the third bank robbery, in violation of 18 U.S.C. § 924(c). The Eastern District case was transferred to this district under Federal Rule of Criminal Procedure 20. On May 23, 2007, defendant pled guilty to the three counts of armed bank robbery and the section 924(c) violation. There is no plea agreement in this case.

**ARGUMENT**

The United States fully endorses the sentencing recommendation of the probation office. Defendant is a chronic bank robber who presents a real threat to bank tellers and other innocent people when he is out of custody. Upon being released from a halfway house after serving a 188-month sentence for armed bank robbery, defendant was unable to go more than a single week before robbing three new banks in quick succession. Just as troubling, defendant progressed from using a toy gun in the first two robberies to using a semi-automatic rifle in the final one. A sentence of 193 months is warranted here under the sentencing guidelines and is reasonable under 18 U.S.C. § 3553(a).

I.    <u>An Upward Departure is Warranted Under The Guidelines.</u>

Under the normal operation of the sentencing guidelines, defendant would be placed in criminal history category ("CHC") III. Placing him in that category, though, seriously understates his criminal history, which is marked by a largely unbroken chain of criminal convictions and incarcerations that extends over nearly 35 years, from defendant's 21st birthday to the present day. If placed in CHC III, defendant's guidelines sentencing range is 162-181 months. Since placing defendant in CHC III substantially under-represents the seriousness of his criminal history and the likelihood that he will commit other crimes, the modest upward departure recommended by the probation office is well justified here.

A.  <u>The PSR Correctly Calculates the Applicable Sentencing Guidelines Range.</u>

The PSR properly specifies defendant's offense level for the three bank robberies as 26, after giving defendant a credit of three offense levels for his acceptance of responsibility. PSR ¶¶ 26-56. For a defendant at criminal history category III, offense level 26 yields a guidelines sentencing range of 78-97 months. That range, though, addresses only the three bank robbery counts and does not address the section 924(c) count. Defendant has admitted to brandishing the rifle he used in the third bank robbery, which by statute requires an additional sentence of not less than seven years (84 months). See 18 U.S.C. § 924(c)(1)(A)(ii). That additional sentence must run consecutively to the sentence for the bank robberies. Id. § 924(c)(1)(D)(ii). Adding 84 months, then, to the 78-97 months sentencing range for the bank robberies yields a guidelines sentencing range of 162-181 months for the four convictions as a whole.

B.  <u>Defendant's Serious Criminal History Warrants an Upward Departure Here.</u>

Defendant has a lengthy criminal history that spans at least his entire adulthood. That history includes convictions for selling drugs, burglary, a series of thefts, and multiple armed robberies. PSR ¶¶ 59-66.[2] For nearly the past 35 years, since he reached adulthood, defendant has experienced a largely unbroken chain of criminal convictions and incarcerations. As a result, he has spent the majority of his adult life in prison.

Despite this lengthy history of serious criminal activity, the guidelines assess defendant with only three criminal history points as a direct result of his prior convictions. Id. ¶ 67. That is because, under the guidelines' rules for counting past criminal convictions, all but defendant's most recent conviction are too old to count for purposes of assigning criminal history points. See id. ¶¶ 59-66 (assigning criminal history points only to defendant's most recent conviction); U.S. Sentencing Guidelines Manual § 4A1.2(e) (specifying applicable time period for counting prior convictions). Thus, despite his lengthy history of serious, violent crime, defendant receives only

---

[2] On top of these well-documented adult convictions, defendant has experienced a series of arrests and apparent additional convictions as an adult and a juvenile. PSR ¶¶ 70-79. These additional arrests and apparent convictions are not well documented, primarily because they occurred years ago.

UNITED STATES' SENTENCING MEMO.
CR 07-0111 CRB, CR 07-0293 CRB           4

three criminal history points for his last armed robbery conviction, plus two points for committing his latest offenses while on supervised release, plus an additional point for committing these latest offenses less than two years after release from prison. This total of six criminal history points places defendant in CHC III.

Placing defendant in CHC III greatly understates his actual criminal history, given the seriousness, consistency, volume, and duration of his past criminal conduct. Under the guidelines policy statement contained at section 4A1.3(a)(1), an upward departure may be warranted where a "defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." This is just such a case. CHC III substantially under-represents the seriousness of defendant's criminal history by failing to take into account defendant's many convictions prior to his 1992 armed robbery conviction. The only reason those additional prior convictions are not counted is that they are more than 15 years old. And the only reason more than 15 years passed between several of those convictions and defendant's instant offenses is that defendant spent nearly all of the past 15 years in prison while serving a 188-month sentence for armed bank robbery. In addition, placing defendant in CHC III does not adequately take account of defendant's high likelihood of committing further crimes. That high likelihood is shown by the fact that defendant robbed the three banks at issue here almost immediately after being released from prison. For these reasons, defendant warrants an upward departure based on an inadequate criminal history category.

If the Court were to decide that CHC IV more adequately represented defendant's actual criminal history, the applicable guidelines sentencing range would be 176-199 months. The 193-month sentence recommended by both the probation office and the United States is within that guidelines range. If the Court were to decide that CHC V or VI more adequately represented defendant's actual criminal history, the 193-month sentence recommended by the probation

UNITED STATES' SENTENCING MEMO.
CR 07-0111 CRB, CR 07-0293 CRB           5

office and government would fall below the applicable guidelines range.³ For all these reasons, a sentence of 193 months is well supported under the sentencing guidelines.

II.     A Sentence of 193 Months is Reasonable.

In addition to being well supported by the guidelines, a 193-month sentence is reasonable under the sentencing factors established by 18 U.S.C. § 3553(a). The nature and circumstances of the instant offenses call for a substantial sentence. Especially significant in this regard are the facts that defendant committed three bank robberies within the span of a week; that he was armed during the robberies; that he threatened bank tellers, including by pointing his weapons at them; and that he graduated, during the course of these three robberies, from using a plastic toy gun to using a semi-automatic rifle.

Defendant's history and characteristics also call for a substantial sentence here. As the probation office notes, "defendant's criminal conduct encompasses forty years of almost non-stop violence and theft with minimal time between release from custody and reoffending." PSR ¶ 116. In light of the fact that very little time passed between the time defendant left custody and the time he committed these three bank robberies, a lengthy sentence is necessary in order to protect the public from the high likelihood that defendant will commit a new offense if and when he is released from prison.

In joining the probation office's recommendation for a 193-month sentence, the United States has been significantly influenced by the fact that defendant received a 188-month sentence when he last committed this very same crime. Where a defendant commits the exact same crime as he committed previously, interests of deterrence call strongly for a higher sentence than the defendant received the previous time around. That is especially so on the facts here, where defendant committed three new bank robberies only a short time after completing service of a sentence for committing five other bank robberies.

---

³ If defendant were in CHC V, his guidelines sentencing range would be 194-221 months. If defendant were in CHC VI, his guidelines range would be 204-234 months.

UNITED STATES' SENTENCING MEMO.
CR 07-0111 CRB, CR 07-0293 CRB                 6

**CONCLUSION**

For the reasons described above, the United States respectfully asks this Court to impose a sentence of 193 months imprisonment, five years supervised release, $12,740 restitution, and a $400 special assessment.

DATED: August 22, 2007                    Respectfully submitted,

SCOTT N. SCHOOLS
United States Attorney


_____/s/_____
ANDREW P. CAPUTO
Assistant United States Attorney

UNITED STATES' SENTENCING MEMO.
CR 07-0111 CRB, CR 07-0293 CRB            7

CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee of the office of the United States Attorney, Northern District of California and is a person of such age and discretion to be competent to serve papers. The undersigned certifies that she caused copies of

**UNITED STATES' SENTENCING MEMORANDUM**

in the case of **UNITED STATES V. PAUL PARIS, CR 07-0111 CRB and CR 07-0293 CRB** to be served on the parties in this action, by placing a true copy thereof in a sealed envelope, addressed as follows which is the last known address:

**Constance M. Cook, USPO
United States Probation Office
1301 Clay Street, Suite 220S
Oakland, CA  94612
Fax: 510-637-3625**

____ (By Personal Service), I caused such envelope to be delivered by hand to the person or offices of each addressee(s) above.

_X_ (By Facsimile), I caused each such document to be sent by Facsimile to the person or offices of each addressee(s) above.

____ (By Mail), I caused each such envelope, with postage thereon fully prepaid, to be placed in the United States mail at San Francisco, California.

____ (By Fed Ex), I caused each such envelope to be delivered by FED EX to the address listed above.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:   August 22, 2007

/s/
RAWATY YIM
United States Attorney's Office

UNITED STATES' SENTENCING MEMO.
CR 07-0111 CRB, CR 07-0293 CRB          8